348–352 WEST 27TH STREET CORP., Plaintiff, *v.* WILLIAM DROPKIN and FRANK BLOOM, Copartners Doing Business under the Firm Name and Style of WEST TWENTY-SEVENTH STREET GARAGE, LOUIS M. BORNSTEIN, BEN SCHLEIER and WILLFRANK REALTY CORPORATION, Defendants.

Supreme Court, Special Term, New York County, June 30, 1942.

*James A. Dayton* [*D. Donald D'Amato* of counsel], for the plaintiff.

*Levy, Kornblum & Katz* [*Joseph Katz* of counsel], for the defendants William Dropkin, Frank Bloom and Willfrank Realty Corporation.

*Albert I. Schmalholz,* for the defendant Louis M. Bornstein.

*David L. Raider,* for the defendant Ben Schleier.

EDER, J. MOTION to dismiss complaint upon the ground that it fails to state facts sufficient to constitute a cause of action. This is a somewhat peculiar suit. The action is brought in equity. In brief the substance thereof is that the plaintiff, as landlord, sued New Chelsea Garage, Inc. (not named as a defendant) for unpaid rent for the months of June and July, 1941, covering the garage premises at 348–352 West 27th Street, and on July 21, 1941, obtained a judgment against it for $1,942.67. It is alleged that this judgment became uncollectible because of the acts and conduct of the defendants acting in concert and conspiracy to attain this end.

The New Chelsea Garage, Inc., and the plaintiff, in 1936, entered into a lease whereby the former leased from the latter the said garage premises for a term of twenty-one years. It is asserted that the stock of the former was originally owned by defendant Dropkin and one Cohen who later transferred his interest to the defendant Bloom, so that the defendants Dropkin and Bloom each owned one-half of the stock of that corporation; that although the lease was held by New Chelsea Garage, Inc., the business at the premises was not conducted either in that name or in a partnership name of West 27th Street Garage; that the lease was never assigned by the New Chelsea Garage, Inc. It is then alleged

that on May 19, 1940, the plaintiff and New Chelsea Garage, Inc., entered into an agreement whereby the plaintiff agreed to accept from it the sum of $2,812.50 in full settlement of all rent due up to May 31, 1940, and that the said New Chelsea Garage, Inc., agreed to pay rent thereafter at the rate of $966.66 per month beginning June 1, 1941; that the arrears were paid by a check of $812.50 and by transferring the security of $2,000 deposited under the lease.

It is claimed that the leasehold acquired by New Chelsea Garage, Inc., was a valuable one to which plaintiff could have resorted for satisfaction of its judgment but that through conspiracy of the defendants the lease was canceled leaving the said named debtor without assets.

It is alleged that New Chelsea Garage, Inc., and Willfrank Realty Corporation are wholly owned and controlled by the defendants Dropkin and Bloom; that in May, 1941, they contemplated the purchase of the premises from the plaintiff; that the defendants conspired to negotiate for the purchase of the premises in the name of a dummy corporation and to this end " deliberately and fraudulently formed a new corporation " known as the Willfrank Realty Corporation to take title to the property and that it was organized and controlled by the defendants for the purpose of " deceiving " the plaintiff into believing that the Willfrank Realty Corporation was a *bona fide* purchaser; that after title was closed and the premises conveyed to the defendant Willfrank Realty Corporation, which was on or about July 15, 1941, there was fraudulently and deliberately acquired from said New Chelsea Garage, Inc., a cancellation of the lease and modification of the lease aforementioned. All that has been stated was done, it is averred to deprive the plaintiff of rent which was due from the said tenant and by way of relief, it is asked that plaintiff have a lien on the aforesaid real property, that the cancellation of the lease be decreed to be fraudulent and that plaintiff have a money judgment against the defendants.

It is the contention of the defendants that it was a perfectly lawful course of conduct to negotiate in the name of a dummy and to conceal the name and identity of the real principal; likewise that it was entirely legal to organize a corporation to enter into the contract of purchase and to acquire title to the realty and that whatever the motive, good or bad, it is immaterial and non-actionable as long as the act itself is lawful, nor does a lawful act become unlawful because two or more combine to do the act. In support thereof the following cases are cited: *Beardsley* v. *Kilmer* (200 App. Div. 378); *Dalury* v. *Rezinas* (183 id. 456; affd., 229 N.Y. 513).

· I quite agree that these contentions are sound and that there was no duty on the part of any of the defendants toward the plaintiff to disclose the real parties in interest nor the motive in seeking to acquire the property and if the plaintiff's cause of action rested on this alone, I should be disposed to grant the motion and dismiss the complaint. But more than this is alleged.

The complaint alleges that at the time of the sale and conveyance on July 15, 1941, there was owing and unpaid to plaintiff the sum of $1,933.33 for rent for the months of June and July, 1941, and the cancellation of the lease was made with the intention of defrauding the plaintiff, a creditor, and thus leave the debtor without assets, the leasehold being an asset of value, leaving the debtor judgment proof, all done pursuant to a preconceived plan and design, and the court in equity is asked to nullify the fraud and restore the status quo or grant other relief and thus enable the creditor (plaintiff) to collect and satisfy its claim out of the property fraudulently disposed of by the debtor in the fashion mentioned.

This, in my opinion, sets forth a good cause of action, for a conveyance made with intent to hinder, delay or defraud present or future creditors may be assailed and set aside (Debtor and Creditor Law, § 276) and that is the basic assertion of the complaint (¶¶ 17, 18).

While there was no conveyance in the strict sense of a transfer, but, rather, a release of the debtor's interest in the realty, its effect was the same and it was a conveyance as defined by article 10 of the Debtor and Creditor Law, dealing with fraudulent conveyances, section 270 thereof, entitled "Definition of terms," providing: " ' Conveyance ' includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." It has been held that release by a beneficiary of an interest in a trust estate with intent to defeat the collection of a possible judgment is void under said section 276 (*Schaefer* v. *Fisher*, 137 Misc. 420).

Upon like principle and by parity of reasoning the plaintiff's · cause of action is maintainable.

In so far as the allegations of conspiracy are concerned, they are relevant to widen the field of evidence and to bind each defendant by the acts and declarations of the others, as coconspirators; the chronological outline detailing the acts and conduct of the defendants is proper where conspiracy is relied on as a count in the complaint.

Motion to dismiss denied.